IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**CINDY L. B.[1]**,

    Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.

Civ. No. 1:20-cv-00558-AA

**OPINION & ORDER**

AIKEN, District Judge:

Plaintiff Cindy L. B. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's claims for a period of disability and disability insurance benefits. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons below, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

BACKGROUND

On February 23, 2017, plaintiff protectively applied for a period of disability and disability insurance benefits, with an alleged disability beginning October 1, 2015, due to ankylosing spondylitis, arthritis, and depression. Tr. 75, 91. Plaintiff's

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION & ORDER

claim was denied initially and again upon reconsideration. Tr. 72, 99. Plaintiff appeared before an Administrative Law Judge ("ALJ") at a hearing held on August 13, 2018. Tr. 33. At the hearing, plaintiff was represented by an attorney and amended her onset date to January 1, 2017. Tr. 37. A vocational expert ("VE") also appeared and testified at the hearing. Tr. 52. Following the hearing, the ALJ issued an unfavorable decision and the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform? *Id.* at 724–25; *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); 20 C.F.R. § 404.1560(c). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953–54.

## COMMISSIONER'S DECISION

The ALJ performed the sequential analysis, noting that plaintiff met the insured status requirements of the Social Security Act through June 30, 2021. Tr. 21. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since her amended onset date. *Id.* At step two, the ALJ found that plaintiff had one severe impairment: ankylosing spondylitis with mild degenerative joint disease of the left and right hand. *Id.* At step three, the ALJ found that plaintiff's impairment or combination of impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 23.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The ALJ found that plaintiff retained the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), with additional limitations:

> [Plaintiff] can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, and crouch, but never crawl. She is limited to occasional overhead reaching bilaterally. The claimant is limited to frequent handling and fingering bilaterally. She should avoid concentrated exposure to hazardous machinery and unprotected heights. She should be allowed to alternate between sitting and standing as needed.

Tr. 24.

At step four, the ALJ found that plaintiff could perform past relevant work as an "Insurance Agent," Dictionary of Occupational Titles 250.257-010, 1991 WL 672355. Tr. 27. At step five, the ALJ found that based on plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that plaintiff could perform, such that plaintiff could sustain substantial gainful employment despite her impairments. Tr. 23. Specifically, the ALJ found that plaintiff could perform representative occupations like cashier II, electronics worker, and small products assembler. *Id*. As a result, the ALJ concluded that plaintiff was not disabled under the Act. Tr. 28.

## STANDARD OF REVIEW

A reviewing court shall affirm the decision of the Commissioner if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is more than a mere scintilla but less

than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotation marks omitted). To determine whether substantial evidence exists, the district court must review the administrative record as a whole, weighing both the evidence that supports and detracts from the decision of the ALJ. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

Plaintiff asserts that the ALJ erred by (1) improperly discounting the medical opinion evidence and (2) improperly discounting her subjective symptom testimony.

### I.  Medical Opinion Evidence

Plaintiff contends that the ALJ erred in weighting the opinions from Davis Dryland, M.D. and Nurse Practitioner Cynthia Mosser. However, there are significant conflicts in in the medical record, and the ALJ is responsible for resolving such conflicts. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008).

#### A.  *David Dryland, M.D., treating rheumatologist*

Dr. Dryland served as plaintiff's rheumatologist since December 2014, with regular visits every two to six months through the date of the hearing. T. 320. Dr. Dryland submitted three statements, an "Arthritis Medical Source Statement," dated

May 25, 2017, Tr. 321-325, an "Auto Immune Disorder Medical Assessment Form," dated June 11, 2018, Tr. 391-95, and a "Physical Medical Source Statement," dated June 11, 2018, Tr. 396-99.

In these statements, Dr. Dryland diagnosed plaintiff as suffering from "ankylosing spondylitis" and "scoliosis." Tr. 321, 391, 396. Dr. Dryland reported that plaintiff's symptoms included "pain, stiffness, fatigue." In these statements, Dr. Dryland opined that plaintiff could sit or stand for between just 15-30 minutes, would need to walk about every 20 minutes, and could rarely lift less than 10 pounds (and nothing heavier). Tr. 27, 322-23. Dr. Dryland also opined that plaintiff would be off task 15% or more of the time, required approximately three unscheduled breaks during the day, and would miss about four days of work per month. Tr. 27, 392-94. He thought that plaintiff could walk one block, sit and stand one hour, rarely lift less than ten pounds (nothing heavier), occasionally twist, rarely stoop, and need to avoid concentrated cold and sunlight. *Id*. Finally, Dr. Dryland opined that plaintiff would be off task at least 25% of the time; could rarely twist, stoop, or climb stairs; could never crouch or climb ladders; and would miss about four days of work per month. Tr. 27, 398-99.

Social security law recognizes three types of medical sources: (1) treating, (2) examining, and (3) non-examining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). An "ALJ must explicitly reject medical opinion, or set forth specific, legitimate reasons for crediting one medical opinion over another." *Id*. Because Dr. Dryland is a treating source, his opinions are generally entitled to more weight than those given

by doctors who did not treat Plaintiff. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). However, because his opinions were contradicted by non-examining physicians Drs. Kehrli and Basham, Tr. 26, and his opinions were not consistent with the medical record, Tr. 27, Dr. Dryland's opinions were not entitled to controlling weight, and the ALJ could validly discount them by providing "specific and legitimate reasons" that were supported by substantial evidence in the record. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [their] interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Here, the ALJ gave Dr. Dryland's opinions "little weight." 26-27. The ALJ's reasoning is supported by substantial evidence in the record with three significant findings that led to the ALJ's weighing of Dr. Dryland's opinions: First, the ALJ found that Dr. Dryland's assessments were generally not consistent with the medical record. Tr. 27. Inconsistency between a treating provider's opinion and a claimant's activities may constitute a specific and legitimate reason to discount that opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). An ALJ may reject medical source opinion evidence that is inconsistent with other medical opinions of record, or inconsistent with the objective medical evidence. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ did not err to reject medical opinion that was inconsistent with objective medical evidence and another medical opinion of record). Dr. Dryland claimed that plaintiff could walk one block without rest or severe pain,

sit and stand continuously up to one hour at one time, and lift only less than ten pounds. Tr. 27, 392-393. The ALJ found that Dr. Dryland's statements about plaintiff were generally not consistent with the medical record, which showed that plaintiff walked a mile per day into 2018 and had a generally normal musculoskeletal examination beyond a noted back issue. Tr. 27, 242, 303, 328, 379, 383, 406.

Second, the ALJ considered that Dr. Dryland's opinions were more consistent with plaintiff's subjective complaints without giving due regard to the objective evidence. Specifically, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints. *Tommasetti*, 533 F.3d at 1041. The ALJ reasonably found that Dr. Dryland relied on plaintiff's subjective complaints. Tr. 27. As discussed below, the ALJ found that plaintiff's subjective statements were not reliable.

Third, Dr. Dryland's opinion that plaintiff should avoid sunlight was "unique and not consistent with anything found during [the ALJ's] review of the medical records." Tr. 27, 394. The incongruity between a physician's answers on a questionnaire and the medical records is a specific and legitimate reason for rejecting the physician's opinion of plaintiff's limitations. *Tommasetti*, 533 F.3d at 1041. Here, the full record contradicted the statement that plaintiff should avoid sunlight. For instance, plaintiff attested that she goes outside often to watch her dogs or just sit in the sun, with no adverse effects mentioned from sun exposure. Tr. 25, 174. The Court agrees with the ALJ's analysis of Dr. Dryland's opinions.

      **B.**    ***Cynthia Mosser, FNP, treating family nurse practitioner***

Nurse Mosser was plaintiff's primary care provider and treated plaintiff since 2014. Tr. 262. Nurse Mosser submitted a "Physical Medical Source Statement," dated July 30, 2018, Tr. 419-22. In this statement, she diagnosed plaintiff as suffering from "Depression with Anxiety, fatigue." Tr. 419. Nurse Mosser reported that plaintiff's symptoms included "Pain, fatigue, depression w/ anxiety." *Id*. In this statement, Nurse Mosser opined that plaintiff could walk 1-2 blocks without rest or severe pain, could sit just 20 minutes at one time, could stand 30 minutes at one time, would need to walk about every 15-20 minutes, could rarely lift less than 10 pounds (and nothing heavier), could never climb stairs and only rarely twist, stoop, or crouch. Tr. 420-421. Nurse Mosser also opined that plaintiff would be off task 25% and would miss more than four days of work per month. Tr. 422. Finally, Nurse Mosser opined that plaintiff could never climb stairs but could occasionally climb ladders. Tr. 421.

Nurse practitioners and therapists are considered "other sources." 20 C.F.R. § 404.1513(d), *Ghanim*, 763 F.3d at 1154, 1161. The ALJ may reject the opinion of an "other source" by giving "reasons germane to each witness for doing so." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010). Inconsistency between a claimant's daily activities is a germane reason to discount the opinion of an "other" medical source. *Ghanim*, 763 F.3d at 1162.

The ALJ considered Nurse Mosser' July 2018 opinion and gave it only partial weight. Tr. 27. In reviewing Nurse Mosser's opinion, the ALJ stated that "[t]he assessment that the claimant can occasionally climb ladders but never stairs seems inherently conflicted and is not consistent with anything found during my review of

the medical records. I also find the assessment that the claimant can only walk one to two city blocks inconsistent with the documentation of the claimant walking a mile per day for six months." *Id*. Therefore, the ALJ provided a germane reason to discount Nurse Mosser's opinions and the Court agrees with the ALJ's analysis of Nurse Mosser's opinions.

The ALJ gave "great weight" to the opinions of the State agency medical consultants, Dr. Kehrli and Dr. Basham. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). As opposed to Nurse Mosser's opinion, they assessed that the claimant had only a light exertional limitation with additional postural and manipulative restrictions, and therefore found that plaintiff could perform light exertional work. Tr. 26, 69-71, 74-87. Unlike Nurse Mosser's opinion, the ALJ found Dr. Kehrli's and Dr. Basham's opinions to be consistent with the medical record. *Id*. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Thomas*, at 957). Therefore, the Court agrees that the ALJ was correct to give the great weight to the opinions of Dr. Kehrli and Dr. Basham, even though they were non-treating and non-examining doctors. Additionally, the Court agrees that the ALJ was correct in not giving great weight to Dr. Dryland and Nurse Mooser.

## II.     Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by discounting her subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle*, 533 F.3d at 1160.

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim*, 763 F.3d at 1163. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.* If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

At the hearing, Plaintiff testified about symptoms related to ankylosing spondylitis, which caused a fusion of "number six vertebrae." Tr. 35-58. Plaintiff testified that her ankylosing spondylitis caused impairments such as "inflammation and pain, and stiffness, and emotional issues." Tr. 41. Plaintiff stated that she was "let go" from her job as an "insurance sales person" in September, 2015, due to "excess absences" caused by these impairments. Tr. 38-39, 40-41. Plaintiff explained that her ankylosing spondylitis got worse overtime with daily occurrences of "stiffness and inflammation." Tr. 41. Plaintiff took Enbrel injections for the pain caused by inflammation from her ankylosing spondylitis. Tr. 42. She was also prescribed Norco for the pain, but became addicted, and voluntarily stopped taking the medication. Tr. 42-43. For resulting "mental conditions," she was prescribed Sertraline and Wellbutrin. Tr. 46. She stated that the Wellbutrin made her "agitated" and gave her "wild dreams." *Id.*

Plaintiff testified that her ankylosing spondylitis caused her to be unable to perform "gripping, grasping, and handling" for an entire work shift. Tr. 44. Additionally, plaintiff stated that she had difficulty raising her hands overhead or in front of her. *Id.* She stated that she had to lay down for "half an hour or more" two to three times throughout the day to relieve her pain. Tr. 45. Additionally, she stated that she could sit for up to forty-five minutes and stand in one spot for half an hour and that this pain required her to "stretch, get up, move" every half hour to an hour. *Id.* She also stated that her impairments allowed her to only walk as far as "around the block." *Id.* Plaintiff testified that she experienced muscle spasms in her back

every day when stooping. Tr. 48-49. She said that she also experienced flare ups in her sternum every two to three months, for a span of five to six days, making it hard to breath and that she would be unable to go to work during those days. Tr. 49-50. She stated that these flare ups also occur in her hips a couple times a month and cause her leg to give out from under her. *Id.* Plaintiff stated that these impairments prevented her from carrying ten pounds. Tr. 50. She also said that these impairments did not allow her to get restful sleep. Tr. 48. Plaintiff testified that ankylosing spondylitis caused her not to have any incentive and to feel "blah and sad." Tr. 47. She stated that those emotional conditions got worse over time. *Id.* Plaintiff stated that she cooked a couple times a week. Tr. 50. She said that she also did some housekeeping but hired a housekeeper for "stripping the bed and the major housework" since she could not do work that required her to "reach up and try to do." Tr. 50-51. Plaintiff testified that she drove twice a week. Tr. 52.

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not "entirely consistent" with the medical evidence and other evidence in the record. Tr. 26. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). However, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle*, 533 F.3d at 1161.

The ALJ's conclusion is supported by substantial evidence. The ALJ reasoned that plaintiff's stated limitations were "inconsistent because the medical records document generally show no worsening of the claimant's condition over the relevant period and a surge in physical activity closing approaching the hearing date with the claimant walking a mile daily." Tr. 26. The ALJ discussed several additional and specific reasons that found plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms not entirely consistent with the medical evidence and other evidence in the record. *See* Tr. 24-26.

First, the ALJ reasoned that plaintiff's testimony about the degree of her mental impairments were inconsistent with her psychiatric examinations. Tr.22-23. The ALJ found that while plaintiff did have some mental impairments wither her diagnoses of depression, anxiety, and substance addiction that her mental impairments did "not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." Tr. 22-23. Counter to plaintiff's testimony, the ALJ found that by July 2018, medical records reflect that plaintiff's mood improved. Tr. 22. Additionally, the ALJ noted that plaintiff had a negative depression screening in June and July 2018. Tr. 23.

Second, the ALJ found that plaintiff's testimony about the degree of her physical impairments were also inconsistent with the medical record. Tr. 19-28. The ALJ noted that physical musculoskeletal examinations documented, at most, moderate decrease in range of motion at the cervical spine on the right greater than the left laterally, which is repeated identically throughout the relevant period. Tr.

Page 14 – OPINION & ORDER

25, 26, 242, 303, 328, 379, 383, 406. The ALJ also considered that there were few other physical examinations, and they did not document any abnormal musculoskeletal findings. Tr. 26, 303, 350, 403, 407, 429. Moreover, the ALJ considered that plaintiff's medical records documented generally no worsening of plaintiff's condition over the relevant period. Tr. 26. In fact, the ALJ noted examinations in November 2017 and June 2018 documented less pain overall. Tr. 26, 379, 383. As noted earlier, plaintiff reported significant benefits from medication and improvement in pain. Tr. 25, 240, 376, 381; *see also* Tr. 326. For instance, she reported that Enbrel was "definitely helping," and she was "very pleased with relief." Tr. 25, 240; *see also* Tr. 326, 376, 381; *see, e.g.*, Tr. 326, 376, 381. Additionally, in March 2017, plaintiff reported that she could walk about a quarter of a mile. Tr. 25, 176. Starting in early 2018, and continuing through at least June 2018, she was walking at least a mile daily. Tr. 27, 406.

Finally, the ALJ considered plaintiff's activities. An ALJ may discount a claimant's allegations when the activities "are incompatible with the severity of symptoms alleged." *Ghanim*, 763 F.3d at 1165. Plaintiff provided the exclusive care for her dogs, including feeding and walking them, and taking them to veterinary appointments. Tr. 25, 172. She attended to her own personal hygiene with no problem unless she had a flare-up, prepared meals, and did some light housework. Tr. 25, 172-74. She drove a car, shopped approximately three times a week, and needed no medical aids to function. Tr. 25, 176-77.

On this record, the Court concludes that the ALJ reasonably considered the medical record in assessing plaintiff's testimony. Accordingly, the Court concludes that the ALJ provided sufficient support for his decision to discount Plaintiff's subjective symptom testimony.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED.

It is so ORDERED and DATED this  20th  day of October 2022.

/s/Ann Aiken

Ann Aiken
United States District Judge